## INJURY FROM FALLING OVER PROTECTION FOR A NEWLY MADE SIDEWALK.

Circuit Court of Cuyahoga County.

THE CITY OF CLEVELAND V. ADELA BROOKS.*

Decided, November 15, 1909.

*Municipal Corporation—Negligence in Guarding New Cement Sidewalk —Independent Contractor.*

A municipal corporation is not liable to one injured by stumbling over a wire netting placed around a newly made cement sidewalk to prevent pedestrians from stepping upon it, by independent contractors employed by the municipal corporation to lay the sidewalk, the municipality having no notice, active or constructive, of the manner of guarding the sidewalk.

*Newton D. Baker,* for plaintiff.
*F. C. Scott,* contra.

HENRY, J.; WINCH, J., and MARVIN, J., concur.

Adela Brooks was injured by a fall over a wire netting stretched across the sidewalk on the southerly side of Euclid avenue in the city of Cleveland. The sidewalk, at the point named, was at the time being relaid by Leek & McGrath, under a contract made by them with the city. The evidence tends to show, and for the purpose of this opinion will be treated as showing, that this netting was so stretched across the sidewalk by Leek & McGrath as to prevent pedestrians from stepping on to the newly-laid cement. The netting was not high enough to prevent one who in walking brought his feet against it from falling over, and was well calculated to cause one thus walking against it to fall.

The city offered no evidence on the trial of the case.

The evidence of the plaintiff having been introduced, the jury was charged and a recovery was had.

---

*Affirmed without opinion, 83 Ohio State, 468.

Before the case was submitted to the jury a motion was made by the city that the court direct a verdict in its favor. This motion should have been sustained.

There was no evidence tending to show that this netting had been across the sidewalk for a sufficient length of time so that it was the duty of the city to know about it, and the only ground upon which the plaintiff below could recover was upon the claim that the city was liable for any damage resulting from the obstruction of the sidewalk in this manner by its contractor.

In the case of *City of Circleville* v. *Neuding*, 41 Ohio St., 465, it was held:

"Where a city contracted for the construction of a cistern, eighteen feet wide and twenty feet deep, in a street, and before the cistern was completed a horse fell into it and was killed, for want of sufficient protection around and over the excavation, to guard animals in the proper use of the street from danger, held, that the city was liable for the loss of the horse, although it did not reserve or exercise any control or direction over the manner of doing the work, except to see that it was done according to specifications which were a part of the contract."

In the opinion the court called attention to the fact that such an excavation in a street, unless protected to guard persons and animals using the street from falling into it, was necessarily dangerous, and that the city was under statutory obligations to keep the streets open and in repair and free from nuisance, and it could not cast this duty upon the contractor so as to relieve itself from liability to one who should receive any injury. And this language is used:

"But the public in the use of the streets may rely upon the legal obligation of the city to keep them free from dangerous places, or if such places become necessary to be made in the course of an improvement or work necessary or proper for the city to do, that it shall so guard them that no injury shall result in the ordinary use of the street."

This was a case then in which the very thing to be done made a dangerous place in the street. The city knew that such dangerous place must be made in the street, and the law is that the city was bound to see that a proper guard should be placed to

keep from falling into this dangerous place any person or animal traveling upon said street, but in the case before us it isn't that there was a dangerous place in the street that caused the accident, but that of placing a guard to keep people from going upon a certain part of the street, not because that part of the street was dangerous by reason of the work there being done, but to prevent from going upon a place which it would be disagreeable for them to walk upon, which guard was so placed as to make it dangerous.

In the case of *Covington & Cincinnati Bridge Co.* v. *Steinbrock and Patrick,* 61 O. S., 315, the syllabus reads:

"When danger to others is likely to attend the doing of certain work, unless care is observed, the person having it to do is under a duty to see that it is done with reasonable care, and can not, by the employment of an independent contractor, relieve himself from liability for injuries resulting to others from the negligence of the contractor or his servants.

"The ruined walls of a building of the defendant, measurably destroyed by fire, were left standing, a menace to the public and the property of others in the vicinity. He was ordered by the inspector of buildings to take down the walls; and, for the purpose, employed a contractor to do the work, for an agreed consideration, and stipulated he should save him harmless for injuries to others in doing the work. The east wall, by reason of the negligence of the contractors in attempting to pull it down, fell outward upon and injured the property of the plaintiffs situated across an alley from the wall. *Held*: The defendant is liable for the injury."

And at page 232 of the opinion in that case, this language is used:

"The doctrine of independent contractor, whereby one who lets work to be done by another, reserving no control over the performance of the work, is not liable to third persons for injuries resulting from negligence of the contractor or his servants, is subject to several important exceptions. One of these * * * is where the employer is, from the nature and character of the work, under a duty to others to see that it is carefully performed."

And then quoting from the case of *Bower* v. *Peate* (1 L. R., Q. B. Div., 321, 326) it is said:

"That a man who orders a work to be executed from which in the natural course of things, injurious consequences to his neighbor must be expected to arise, unless means are adopted by which such consequences may be averted, is bound to see to the doing of that which is necessary to prevent mischief, and can not relieve himself of his responsibility by employing some one else—whether it be the contractor employed to do the work from which the danger arises or some independent person—or to do what is necessary to prevent the act he has ordered done from becoming unlawful."

In the case of *City of Columbus* v. *Penrod,* 73 O. S., 609, the city had given a license to Penrod to use a part of the street for the placing of building materials for use in the construction of a building on adjacent property, and the court held that where such a license is given to do a thing which would be in the nature of things dangerous, the city would be liable if it was so negligently done that an innocent party was injured by reason thereof. But, they say, this is not the rule where the thing to be done is not necessarily dangerous, and having called attention to the cases which hold that where work is to be done in a street either by a licensee or by a contractor which is necessarily dangerous, the city is liable for the negligence of the licensee or the contractor, the court say:

"These cases, read in the light of the facts, an excavation in the sidewalk, necessarily dangerous, in the one case, and in the other an obstruction in the street, not necessarily dangerous, consisting of building materials, are not in conflict, and the present case being one of an obstruction in the street, not necessarily dangerous, we are not required to determine whether *Clark* v. *Fry,* in so far as it applies to excavations or obstructions necessarily dangerous is too broad, or whether in a case of permit to the owner of adjacent property to make an excavation in the street for some lawful purpose incident to the use of his property, it would be the duty of the city to see that a nuisance is not created."

But the court says in the syllabus in this case, as follows:

"A permit by a city to use part of the street for the placing of building materials for use in the construction of a building on the adjacent property is the mere regulation of a right of the property owner to make such use of the street and not a license

to do an act in the street which but for such license would be illegal or a nuisance, and a city by giving such permit is not charged with the duty of seeing that the place is guarded, and will not be liable in damages to a person injured in consequence of the omission to guard such place with barriers or lights unless it had notice, express or implied, of such omission and after such notice was guilty of negligence.''

We are of opinion that in the case at bar there was no obligation upon the city to see to it that the guard which the contractor might place about the work that he was doing, which work would not in itself constitute a danger to the public, was not dangerous; or in other words, the city was not bound to see that the work was so guarded that there could be no danger from the guard itself.

The result is that the judgment of the court of common pleas is reversed and the cause remanded for further proceedings.